## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-60015-COHN/STRAUSS

**ANTHONY STEVEN COLLICA,**

     Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

     Defendant.

_____/

### REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (DE 26) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (DE 27).  This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters.  (DE 5).  I have reviewed both motions, all summary judgment materials, and the record in this case.  For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion (DE 26) be **DENIED** and that Defendant's Motion (DE 27) be **GRANTED**.

### BACKGROUND

**I.    PROCEDURAL HISTORY**

Plaintiff filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits on February 1, 2017, alleging a disability onset date of January 1, 2012.  (Tr. 77, 89, 240-49).  His claim was denied initially and upon reconsideration.  (Tr. 139-46, 151-62).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 163-65).  Plaintiff's hearing was held on February 20, 2019, before ALJ Mary Brennan.  (Tr. 47-

76).  Plaintiff appeared with counsel and a vocational expert ("VE") testified.  (Tr. 49, 69-75).  On April 15, 2019, the ALJ issued her decision, finding that Plaintiff was not "disabled" under the Social Security Act.  (Tr. 7-26).  Plaintiff requested Appeals Council review and his request was denied on January 30, 2020, thereby leaving the ALJ's decision as the final decision of the Commissioner.  (Tr. 1-6, 230-39).  Consequently, on January 4, 2021, Plaintiff filed this action seeking judicial review of the Commissioner's decision.  (DE 1).

## II.    PLAINTIFF'S BACKGROUND

Plaintiff was 45 years old at the time of his alleged onset date, 50 years old at the time he applied for DIB benefits, 52 years old at the time of the hearing, and 52 years old when the ALJ issued her decision.  (Tr. 7, 52, 240).  He completed high school and one year of college.  (Tr. 263).  Plaintiff had past relevant work as a plumber.  (Tr. 263).  In his initial application, Plaintiff stated that he had the following illnesses, injuries, and conditions: chronic obstructive pulmonary disease/exposure to asbestos, chronic electrolyte imbalance with chronic hypokalemia, severe chronic pseudo gout, chronic diarrhea, chronic cough causing vomiting, lightheadedness, severe generalized anxiety disorder, irritable bowel syndrome, polyarthralgia, plantar fasciitis, and hypophosphatemia and thrombocytopenia.  (Tr. 79).

## III.    RELEVANT MEDICAL EVIDENCE

Plaintiff has a lengthy medical history.[1]  He began receiving psychiatric treatment in January 2017 at Holy Cross Hospital.  (Tr. 387).  State agency psychological consultant Richard Willens, Psy.D. reviewed Plaintiff's medical history and reports in March 2017.  (Tr. 82-92).  Sheryl Ferguson, Psy.D. evaluated Plaintiff for the Social Security Administration in April 2017,

---

[1] Plaintiff does not dispute the ALJ's findings regarding his physical impairments.  (DE 26 at 1 n.4).  He solely disputes the ALJ's findings regarding his alleged mental impairments.  Therefore, this summary of medical evidence focuses on Plaintiff's alleged mental impairments.

and State agency psychologist Renee McPhersonSalandy, Psy.D. reviewed Plaintiff's records in April 2017.  (Tr. 111-13, 128-33, 518-20).  Plaintiff was treated by psychiatrists, Victoria Baskin, M.D. and Anthony DeFilippo, M.D., at Archways Behavioral Health ("Archways") from May 2017 until October 2018.  (Tr. 816-913).

### A.  Archways Medical Opinions and Evidence

Dr. Baskin treated Plaintiff from May 2017 to October 2017.  (Tr. 559-66, 811-15, 818-913).  She assessed Plaintiff on May 30, 2017, and indicated that Plaintiff had good hygiene and grooming; a cooperative, friendly, but easily distracted attitude; normal and direct eye contact; fair insight, reliability, and motivation; an anxious and worried, but also euthymic mood; and constricted affect.  (Tr. 562-63, 821-22).  Dr. Baskin also noted that Plaintiff was fully oriented, had a logical, goal-directed, and intact thought process and no distortions of reality, and that his speech was coherent and goal directed.  (Tr. 562-63, 821-22).  At this assessment, Plaintiff indicated that he had no psychiatric history and no history of alcohol use.  (Tr. 559-60, 818-19).  Dr. Baskin diagnosed Plaintiff with generalized anxiety disorder and prescribed him Celexa, Trazodone, and Buspar.  (Tr. 563, 822).  After Plaintiff visited Dr. Baskin again on August 22, 2017, she diagnosed him with major depressive disorder and prescribed him Cymbalta.  (Tr. 900).

Dr. Baskin also completed a Psychiatric/Psychological Impairment Questionnaire ("PPIQ") form on August 22, 2017.  (Tr. 811-15).  On that PPIQ form, Dr. Baskin reported that Plaintiff had many signs and symptoms supporting the diagnoses of generalized anxiety disorder and major depressive disorder.  (Tr. 812).  She stated that Plaintiff's most frequent and/or severe symptoms were "significant anxiety, paranoia, sensitivity, crying spells, and low frustration tolerance."  (Tr. 813).  She further opined that Plaintiff had moderate to marked limitations in six

various mental tasks, marked limitations in sixteen various mental tasks,[2] and opined that Plaintiff could not work or walk.  (Tr. 814-15).  After Plaintiff's August 2017 visit, Plaintiff visited Dr. Baskin on two more occasions: September 9, 2017, and October 24, 2017.  (Tr. 884-95).  Dr. Baskin's notes from Plaintiff's last two visits were similar to her notes after his May 2017 (and August 22, 2017) visit.  (Tr. 884-95).  For example, after Plaintiff's September and October 2017 visits, Dr. Baskin indicated that Plaintiff had an intact and logical thought process; coherent and goal-directed speech; fair insight, reliability, and motivation; a cooperative attitude; and an anxious and depressed but also calm mood.  (Tr. 884-85, 888, 890-91).  Dr. Baskin also noted that there was no change in her previous diagnoses or prescribed medications.  (Tr. 888, 894).

Plaintiff began seeing Psychiatrist Dr. DeFilippo, on November 14, 2017, and continued to see him until October 2018.  (Tr. 849-82).  Dr. DeFilippo's observations were largely normal, but he did note that Plaintiff's mood was anxious and worried on several occasions.  (Tr. 849, 861, 867, 879).  Dr. DeFilippo diagnosed Plaintiff with major depressive disorder and anxiety and refilled Plaintiff's medications.  (Tr. 853, 870-71, 876).  Specifically, he increased Plaintiff's dosage of Buspar, decreased his Trazodone, and increased his Duloxetine.  (Tr. 844, 858, 864).

### B.  State Agency Psychologists' Medical Opinions and Evidence

State agency psychological consultant Dr. Willens reviewed Plaintiff's medical records and reports and provided an assessment of his mental and physical functioning.  (Tr. 82, 94).  He opined on March 7, 2017, that Plaintiff's anxiety was non-severe.  (Tr. 82, 94).  Specifically, he noted that "although [Plaintiff] appears to present some [symptoms] of anxiety secondary to more recent attempts at detox/sobriety, the impairment does not attribute to a significant reduction in

---

[2] On the PPIQ form at issue, the degrees of limitation were "none," "mild," "moderate," "moderate-to-marked," and "marked."  (Tr. 814).  Thus, moderate-to-marked limitations and marked limitations were the most severe limitations that could be assessed.

mental functioning." (Tr. 82, 94). Further, Dr. Willens opined that Plaintiff's mental impairments caused only mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (Tr. 82, 94). He further noted that after Plaintiff "calmed down from [delirium tremens]" Plaintiff had an intact mental status examination. (Tr. 82, 94). Finally, Dr. Willens opined that Plaintiff had "no overt mental impairments." (Tr. 82, 94).

On June 27, 2017, State agency psychological consultant Dr. McPhersonSalandy reviewed the claim file and opined that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 111). She further opined that Plaintiff did not have any severe mental impairments. (Tr. 111). She also took note of Publix video footage that showed Plaintiff walking, standing, bending, shopping, and paying for his items without assistance on two occasions without signs of reduced energy. (Tr. 113). According to Dr. McPhersonSalandy, this footage demonstrated Plaintiff's ability to complete his own purchases, revealed good dexterity, and suggested that he did not have mobility or behavioral issues. (Tr. 113). Dr. McPhersonSalandy also noted that although Plaintiff appeared to have anxiety, such an impairment "d[id] not attribute to a significant reduction in mental functioning." (Tr. 113).

### C. Dr. Ferguson's Medical Opinions and Evidence

On April 19, 2017, Dr. Ferguson evaluated Plaintiff for the Social Security Administration. (Tr. 518-20). She noted that Plaintiff reported that he had no history of suicidal ideation or psychological involvement. (Tr. 519). Dr. Ferguson opined that Plaintiff had a depressed mood and affect, a fair flow of ideas, fair common sense, and no evidence of ideas of reference, hallucinations, delusions, or psychotic distortions. (Tr. 519). Further, she opined that Plaintiff

was fairly oriented to person, place and time, had fair immediate, recent, and remote memory, and that Plaintiff exhibited a fair fund of information. (Tr. 519). Dr. Ferguson also noted that while Plaintiff exhibited deficits in his ability to think abstractly, he appeared able to competently handle his basic personal funds and care for himself. (Tr. 520). Plaintiff considered himself to be "very easy to get along with" and stated that he had "very good friends." (Tr. 520). Dr. Ferguson also noted that Plaintiff showed fair concentration and persistence and was able to apply himself to all tasks throughout the evaluation. (Tr. 520). Finally, Dr. Ferguson diagnosed Plaintiff with unspecified depressive disorder and rule-out major depressive disorder. (Tr. 520).

IV.     **PLAINTIFF'S HEARING TESTIMONY**

At the hearing, Plaintiff testified that he could no longer work due to "the physical work that plumbing entails," coupled with his inability to walk. (Tr. 54). Plaintiff stated that the pseudo gout flares up in his foot. (Tr. 54-55). These flares last anywhere from two to eight weeks and make it difficult to walk. (Tr. 54-55). Plaintiff further testified that he does not take medication for the pseudo gout because he cannot afford it. (Tr. 68). Plaintiff stated he must "lay down all day" when the flares occur. (Tr. 55). According to Plaintiff, he is unable to leave his home and requires the assistance of a social worker and friends to complete daily tasks such as picking up medication and grocery shopping. (Tr. 57, 60). Plaintiff also stated that he uses a cane every day and often requires a wheelchair when leaving his home. (Tr. 61). Plaintiff acknowledged that a physician never prescribed him a wheelchair. (Tr. 56). Plaintiff's attorney asked him about video footage taken at Publix in 2017 that showed Plaintiff grocery shopping without assistance. (Tr. 62). In response, Plaintiff stated that although it is possible that he went to the grocery store in 2017, he has probably not been to the grocery store since that time. (Tr. 62).

Plaintiff testified that he receives treatment for depression.  (Tr 64).  Plaintiff stated that his depression results in "restless nights" and that he has ongoing suicidal thoughts.  (Tr. 64).  According to Plaintiff, the medication he takes for his depression makes him feel "less depressed but more sleepy."  (Tr. 65).  Plaintiff also testified that he cannot take this medication during the day because he "cannot function" when he does.  (Tr. 66).

Plaintiff stated that he lives in a rented room in a house.  (Tr. 51-52, 66-67).  Plaintiff testified that he has no funds.  (Tr. 51).  Plaintiff further testified that he only eats microwavable meals, does not know how to use a computer or telephone, and does not shower some days due to his pseudo gout flare-ups.  (Tr. 57-58, 64).

### V.   VE'S HEARING TESTIMONY

The VE briefly testified after Plaintiff.  (Tr. 69).  He answered several hypothetical questions posed by the ALJ and Plaintiff's attorney.  (Tr. 70-75).  The ALJ asked the VE to determine whether an individual with the Plaintiff's same age, education, and work experience could return to his past work as a plumber if he is "capable of working at the medium level," can "occasionally climb ladders, ropes, and scaffolds," can "frequently climb stairs, frequently kneel, crouch, and crawl, should have no more than occasional exposure to concentrated atmospheric pollutants" and "can occasionally use the right lower extremity for pushing and pulling." (Tr. 69-70).  The VE testified that based on this hypothetical, the individual would be precluded from past work, but could perform work as a laundry laborer (72,000 jobs), hand packager (217,000 jobs), and linen room attendant (180,000 jobs).  (Tr. 70).  The VE stated that if that same individual required the use of a cane, that individual could still perform the work of a laundry laborer but would be unable to work as a hand packager and linen room attendant.  (Tr. 72).

The ALJ next posed a hypothetical to the VE regarding an individual with Plaintiff's age, education, and work experience who is limited to light work, and who can "only occasionally climb ladders, ropes, and scaffolds."  (Tr. 70).  The ALJ further noted that the individual can only occasionally balance, stoop, kneel, crouch, crawl climb stairs, and has "no more than occasional exposure to concentrated atmospheric pollutants." (Tr. 70-71).  The VE determined that such an individual could perform work as an inspector (153,000 jobs), a mail sorter (97,000 jobs), and a shipping and receiving weigher (70,000 jobs).  (Tr. 71).  The VE further stated that if that same individual required the use of a cane, they would be able to perform all of the jobs listed above. (Tr. 71).

Finally, Plaintiff's attorney asked the VE whether an individual with Plaintiff's alleged mental limitations (difficulty remembering locations and work procedures; difficulty understanding, remembering, and carrying out tasks; difficulty maintaining concentration; difficulty with punctuality; difficulty with working in coordination with others; difficulty completing a work day without psychologically based interruptions; difficulty responding and behaving appropriately; difficulty setting goals and making plans) could perform Plaintiff's past relevant work or any work in the national economy.  (Tr. 74-75).  The VE determined that these limitations would be "work preclusive."  (Tr. 75).

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (stating that "the threshold for such evidentiary sufficiency is not high").  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer*, 395 F.3d at 1210 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)); *see also Valdez v. Comm'r of Soc. Sec.*, 808 Fed. Appx. 1005, 1008 (11th Cir. 2020) (same).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Dyer*, 395 F.3d at 1210 (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

## II.    THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v.*

*Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)); *see Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. *See* 20 C.F.R. § 416.920(b). If so, a finding of "no disability" is made. 20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. *See* 20 C.F.R. § 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. *See id.* If not, the inquiry will proceed to the next stage. *See* 20 C.F.R. § 416.920(e).

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). The RFC determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 416.945(a)(3). An ALJ makes an RFC determination by considering the claimant's physical and mental abilities and limitations. *See* 20 C.F.R. § 404.1545. When assessing a claimant's physical

abilities, an ALJ evaluates the claimant's ability to sit, stand, walk, lift, carry, push, pull, stoop, crouch, and reach. *See* 20 C.F.R. § 404.1545(b). And when assessing a claimant's mental abilities, an ALJ evaluates whether a claimant has limitations in "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 404.1545(c).

To determine the physical exertion requirements of jobs in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567. Jobs are also classified as unskilled, semi-skilled, and skilled. *See* 20 C.F.R. § 404.1568. Then, an ALJ must compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. *See* 20 C.F.R. § 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. *See* 20 C.F.R. § 416.920(a)(4)(v). "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *See id.* At this fifth and final step, the ALJ must resolve whether the claimant is capable of performing other work. *See* 20 C.F.R. §§ 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is

not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 416.969.  The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience.  *See Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule."  20 C.F.R. § 416.969.  Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."  *Phillips*, 357 F.3d at 1242 (citation omitted); *see Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991).  Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC.  *See Hargis*, 945 F.2d at 1490.  However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate.  *See Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003).  A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing.  *Id.* (citing *Walker*, 889 F.2d at 50).

III.  __ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION__

After considering the evidence, the ALJ found that Plaintiff could not perform his past relevant work as a plumber.  (Tr. 24).  The ALJ determined, however, that Plaintiff could perform work as a laundry laborer, a hand packager, and a linen room attendant, jobs which exist in

significant numbers in the national economy.  (Tr. 25).  Thus, the ALJ found that Plaintiff was not "disabled" under the Social Security Act.  (Tr. 26).

Addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the date of his application.  (Tr. 12).  Then, at step two, the ALJ found that Plaintiff had the following severe impairments: pseudo gout, right knee osteoarthritis, and chronic obstructive pulmonary disease.  (Tr. 12).  The ALJ noted that Plaintiff also had various non-severe impairments: alcohol dependence, irritable bowel syndrome, anxiety, and depression.  (Tr. 13).  In making these findings, the ALJ described evidence that supported her conclusions.  (Tr. 13-17).  The ALJ concluded that Plaintiff's medically determinable mental impairments of anxiety and depression, considered singly and in combination, did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities.  (Tr. 13).

In reaching her conclusion about the severity of Plaintiff's mental impairments, the ALJ discussed why she assigned great weight to the opinions of the State agency psychologists, Dr. Willens and Dr. McPhersonSalandy, and little weight to the opinion of Plaintiff's treating psychiatrist, Dr. Baskin.  (Tr. 13-16).  The ALJ noted that the State agency psychological consultants determined that Plaintiff's mental impairments were non-severe.  (Tr. 13-14).  The ALJ found that these determinations were supported by detailed summaries of Plaintiff's medical history.  (Tr. 13-14).  In further support of her conclusion that the State agency psychologists' opinions were entitled to great weight, the ALJ extensively discussed how their opinions were consistent with Dr. Ferguson's objective mental status examination and also consistent with the objective mental status examinations performed at Archways over the course of more than a year.  (Tr. 13-14).  Then the ALJ discussed her reasoning for affording little weight to the opinions of Plaintiff's treating psychiatrist, Dr. Baskin.  (Tr. 15).  The ALJ noted that Dr. Baskin opined

Plaintiff's mental impairments caused him marked limitations after only four visits with Plaintiff. (Tr. 15).  Additionally, the ALJ opined that Dr. Baskin's opinions were generally inconsistent with Archways' clinicians' objective mental status examination reports and treatment notes from July 2017 to August 2018, which stated that Plaintiff had "an intact recent and remote memory," "an average fund of knowledge," and "no difficulty with concentration or attention."  (Tr. 15).  Thus, the ALJ afforded greater deference and weight to the State agency psychologists' opinions than to Dr. Baskin's opinions because "they [we]re a more accurate reflection of the substantial evidence of record."  (Tr. 15).

Further addressing step two of the sequential evaluation, the ALJ reviewed the four areas of mental functioning and made findings regarding each area.  (Tr. 16-17).  In her determination regarding the first functional area of understanding, remembering or applying information, the ALJ found that Plaintiff had a mild limitation.  (Tr. 16).  She noted that Dr. Ferguson's opinions on the mental status examination, and the Archways records, showed that Plaintiff had fair common sense, relevant and logical train of thought, fair immediate, recent, and remote memory, fair judgment, and an average fund of knowledge.  (Tr. 16, 519, 563, 873, 885).  Regarding the second functional area of interacting with others, the ALJ determined that Plaintiff had a mild limitation.  (Tr. 16).  She based this finding in part on Plaintiff's comments to Dr. Ferguson where he described himself as "very easy to get along with" and noted that he had "good friends."  (Tr. 16, 520).  The ALJ also discussed how Plaintiff was able to live with others, maintain friendships, and noted that physicians described Plaintiff as cooperative.  (Tr. 16, 66, 110, 520, 523, 562, 627, 821, 838, 840).  The ALJ determined that this information contradicted Plaintiff's statement in his Function Report that he did not like most people and avoided people regularly.  (Tr. 16, 277-78).

Concerning the third functional area of concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff had a mild limitation. (Tr. 16). The ALJ based this finding on Dr. Ferguson's assessment that Plaintiff was able to apply himself to all tasks during the evaluation and noted that he showed fair concentration and persistence. (Tr. 16, 520). The ALJ also noted that Plaintiff himself stated that he was able to understand and follow instructions well enough to fill out the disability paperwork. (Tr. 17, 279). Finally, regarding the fourth functional area, adapting and managing oneself, the ALJ found that Plaintiff had a mild limitation. (Tr. 17). She discussed how Plaintiff reported he could take care of his personal hygiene, stated that his limitations in performing daily tasks were not caused by his alleged mental conditions, and discussed how the Archways medical providers continually documented that Plaintiff had fair grooming and an appropriate appearance. (Tr. 17, 58, 518, 520, 523, 562, 840). The ALJ ultimately found that Plaintiff's medically determinable mental impairments were non-severe. (Tr. 17). However, because the ALJ found that Plaintiff had severe physical impairments, she continued to step three. (Tr. 12, 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. (Tr. 17). The ALJ determined that Plaintiff had the RFC to perform medium work, except he "can occasionally climb ladders, ropes, and scaffolds, frequently climb stairs and ramps, and frequently kneel, crouch, and crawl." (Tr. 18). She also found that Plaintiff "can occasionally use his lower right extremity for pushing and pulling" and "can occasionally tolerate exposure to atmospheric pollutants." (Tr. 18). In making these findings, the ALJ stated that she considered all symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 18).

In determining Plaintiff's RFC, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence." (Tr. 19). The ALJ stated that the record showed that when Plaintiff took the prescribed medication for his pseudo gout symptoms, he was able to walk without an assistive device. (Tr. 19). Further, the ALJ noted that she did not find Plaintiff's statement that he could not afford such medication persuasive because he was able to afford other medications and was able to pay individuals to accompany him places. (Tr. 19). Next, the ALJ opined that Plaintiff did not receive the type of treatment for his conditions that would be expected of a truly disabled individual. (Tr. 20). The ALJ then discussed evidence that contradicted Plaintiff's testimony regarding his ailments and highlighted inconsistencies throughout Plaintiff's testimony. (Tr. 20-23). The ALJ concluded this section by stating that although she did not believe Plaintiff was functionally limited to the extent he alleged, she reduced his RFC to account for his statements and complaints. (Tr. 24).

At step four the ALJ found, based on the VE's testimony, that Plaintiff was unable to perform his past relevant work as a plumber as actually or generally performed. (Tr. 24). However, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25-26). Specifically, the ALJ accepted the VE's testimony that Plaintiff could work as a laundry laborer (72,000 jobs available), a hand packager (217,000 jobs available), and a linen room attendant (180,000 jobs available). (Tr. 25). At the final step of the sequential evaluation, the ALJ found that Plaintiff had not been under a disability since the date he filed his

application.  (Tr. 26).  This led to the ALJ's ultimate conclusion that Plaintiff was not "disabled"

under the Social Security Act.  (Tr. 26).

## IV.    ANALYSIS OF THE ISSUES

After reviewing the record, I find that the ALJ's determination that Plaintiff is not disabled

is supported by substantial evidence.  Although Plaintiff's Motion only lists two main points of

contention, he raises three cognizable arguments.  First, he argues that the ALJ's findings at step

two of the sequential evaluation – that his mental impairments (depression and anxiety) are non-

severe – are not supported by the substantial evidence.  Embedded this first argument, he argues

that the ALJ erred by affording "little weight" to the opinions of treating psychiatrist, Dr. Baskin,

and affording "great weight" to the opinions of non-examining State agency psychologists.

Finally, Plaintiff argues that the ALJ failed to properly evaluate his subjective statements regarding

the intensity, persistence, and limiting effects of his mental impairments.  I will first address

Plaintiff's argument that the ALJ erred in weighing Dr. Baskin's opinion and then address the

remainder of his arguments in the order he presents them.

### A.  Whether the ALJ failed to afford proper weight to Dr. Baskin's medical
### opinion

Plaintiff contends that the ALJ erred by affording "little weight" to Dr. Baskin's medical

opinions.  After a review of the evidence, I find that the ALJ adequately evaluated Dr. Baskin's

medical opinions.

As an initial matter, 20 C.F.R. § 404.1527 applies to Plaintiff's claim because it was filed

before March 27, 2017.  Under 20 C.F.R. §§ 404.1527 and 416.927, the ALJ was required to

consider the opinion evidence in Plaintiff's case.  These regulations require ALJs to consider

several factors when evaluating medical opinions, including: "(1) the examining relationship; (2)

the treatment relationship, including the length and nature of the treatment relationship; (3)

whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (footnote omitted) (citing 20 C.F.R. § 404.1527(c)). Further, when weighing medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). A treating physician's testimony "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ may find good cause for discounting a physician's testimony when "the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding." *Tackett v. Comm'r of Soc. Sec.*, No. 21-11852, 2022 WL 2314095, at *1 (11th Cir. June 28, 2022).

I find that the ALJ's decision to afford little weight to Dr. Baskin's opinions is supported by substantial evidence. Plaintiff argues that the ALJ improperly focused on the fact that Dr. Baskin only examined him four times. He notes that two of the three psychologists cited by the ALJ never personally observed him. However, the ALJ was solely considering the frequency of examination and the extent of Plaintiff's relationship with his treating physician, something the regulations explicitly allow ALJs to do. *See* 20 C.F.R. 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii). Moreover, the ALJ, as shown above, merely noted the length of treatment as a factor that weighed in favor of affording little weight to Dr. Baskin's opinions, while focusing more heavily on the inconsistencies between Dr. Baskin's opinions and the record as a whole. (Tr. 15-17).

Specifically, the ALJ noted that Dr. Baskin's opinions were "generally inconsistent with the July 2017 to August 2018 Archways' clinicians' reports on objective mental status

18

examination." (Tr. 15).  A closer review of those records reveals that Dr. Baskin herself reported findings that contradict her opinions.  The ALJ cited to Dr. Baskin's PPIQ form dated August 22, 2017.  (Tr. 15).  On that form, Dr. Baskin found that Plaintiff had a constricted affect, difficulty thinking or concentrating, poor memory, marked limitations in understanding and memory, and moderate to marked limitations in concentration and persistence.  (Tr. 811-15).  However, on the same day, Dr. Baskin also noted in a Medication Management/Office Visit form that Plaintiff had intact and logical thought process, orientation of person, place, time, and situation, and fair insight, judgment, reliability, and motivation.  (Tr. 896-97).

Dr. Baskin's opinions, particularly regarding Plaintiff's memory and understanding, were also inconsistent with other opinions in the record, from Archways and elsewhere.  In March 2017, Dr. Willens found that Plaintiff only had mild limitations in understanding, remembering, or applying information; in April 2017, Dr. Ferguson found that Plaintiff had fair immediate, recent, and remote memory; in June 2017, Dr. McPhersonSalandy found that Plaintiff had mild limitations in understanding, remembering, or applying information; and in August 2018 (and on many other occasions), Dr. DeFilippo found that Plaintiff's memory was unremarkable.  (Tr. 849, 854, 861, 867, 873, 879).  Dr. Baskin even noted on multiple occasions in 2017 (June and September) that Plaintiff's memory was unremarkable.  (Tr. 890-91, 908-09).  Additionally, in May 2017 an Archways Psychiatric Evaluation/Office Visit New Client form noted that Plaintiff's memory was intact.  (Tr. 562-63).

As the ALJ noted, Dr. Baskin's opinion that Plaintiff was unable to focus or concentrate was also incongruous with the medical record.  (Tr. 15).  For example, Dr. Willens opined that Plaintiff only had mild limitations in concentrating, and Dr. Ferguson opined that Plaintiff had fair concentration and persistence.  (Tr. 82, 94, 520).  Dr. Baskin herself noted in May 2017 that

Plaintiff's thought content was related to the task and failed to note any problems with concentration or focus.  (Tr. 562-63).  As such, Dr. Baskin's opinions were not only internally inconsistent but also inconsistent with other medical opinions in the record.  (Tr. 82, 94, 111, 519-20, 811-15, 854, 896-97).  Accordingly, the ALJ articulated good cause for discounting Dr. Baskin's opinions, and the ALJ's decision to afford  Dr. Baskin's opinion little weight is supported by substantial evidence.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Plaintiff also argues that the State reviewing psychologists (Dr. Willens and Dr. McPhersonSalandy) based their opinions off of only a month of outpatient mental health treatments and were unable to review any records from July 2017 to August 2018.  However, the ALJ stated that her review of the records from that time period did "not support more severe limitation on the claimant's ability to perform mental work-related activities than what the State agency psychologists opined."  (Tr. 15).  Plaintiff's argument that the ALJ relied on her lay judgment rather than the mental status examinations is also unavailing.  As described above, the ALJ relied on the observations in various mental status examinations that contradicted the opinions of Dr. Baskin.  (Tr. 15).  Moreover, as the ALJ correctly noted, "the State agency psychologists'. . . provided detailed summaries of [Plaintiff's] medical history" that were consistent with each other and "the objective medical and other substantial evidence of the record," including the observations in the Archways records from July 2017 to August 2018.  (Tr. 13)

Finally, it is important to note that a reviewing court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."  *Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).  Here, the ALJ articulated specific reasoning for the weight she afforded to Dr. Baskin's opinion.  (Tr. 15).  As seen above, this included *inter alia*

reasoning that Dr. Baskin's opinion was inconsistent with the other evidence in the record.  (Tr.

15).  Therefore, I will not second guess her findings.  *See Hunter*, 808 F.3d at 823; *see also Hunter*

*v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962-63 (11th Cir. 2016) (affirming an ALJ's assignment

of little weight to a treating physician's opinion because the ALJ found the physician's "statement

lacked supporting treatment records" and because "the evaluation was inconsistent with other

evidence on the record").

### B. Whether the ALJ erred in determining that Plaintiff's mental impairments were non-severe

Plaintiff contends that the ALJ erred at step two in determining that Plaintiff's mental

impairments of depression and anxiety were non-severe.  Although a review of the record shows

that the ALJ's assessment of Plaintiff's mental impairments was supported by substantial evidence,

any perceived error in determining that these impairments were non-severe is harmless.

As stated above, at step two, the Commissioner determines whether a claimant's

impairment is severe or not severe.  *See* 20 C.F.R. § 416.920(a)(4)(ii).  Step two serves "as a filter

to screen out *de minimis* claims."  *Flemming v. Comm'r of the SSA*, 635 F. App'x 673, 675 (11th

Cir. 2015) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).  A determination

that an impairment is severe necessarily means that the impairment "significantly limits [a]

claimant's physical or mental ability to do basic work activities."  *Crayton v. Callahan*, 120 F.3d

1217, 1219 (11th Cir. 1997).  The Eleventh Circuit has stated that "only claims based on the most

trivial impairments" should be rejected.  *See McDaniel*, 800 F.2d at 1031 (stating that impairments

should only be deemed non-severe "if the abnormality is so slight and its effect so minimal that it

would clearly not be expected to interfere with the individual's ability to work, irrespective of age,

education or work experience").  However, proof that a claimant has impairments, "does not prove

the extent to which [those impairments] limit a claimant's ability to work."  *Hutchinson v. Astrue*,

408 F. App'x 324, 326 (11th Cir. 2011) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  Thus, it is the claimant's burden to show that their alleged impairments limit their ability to work.  *Id.*  Additionally, an error in failing to classify an impairment as severe at step two "results in harmless error when the correct application would not contradict the ALJ's ultimate findings and his decision would stand."  *Stewart v. Comm'r of the SSA*, 746 F. App'x 851, 852 (11th Cir. 2018).  In other words, if the ALJ finds any of the claimant's impairments (or a combination thereof) to be severe and proceeds to step three, the ALJ has done "enough to satisfy the requirement of step two of the sequential evaluation process."  *Packer v. Comm'r, Soc. Sec. Admin.*, 542 Fed. App'x. 890, 891 (11th Cir. 2013); *see also Flemming*, 635 F. App'x at 676 (stating that "even if the ALJ erred in not indicating whether [the claimant's] psychotic disorder was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had two other severe impairments, thereby satisfying step two").

I find that the ALJ did not err in classifying Plaintiff's mental limitations as non-severe. The ALJ determined that Plaintiff's "medically determinable impairments of anxiety and depression, considered singly and in combination, do not cause more than [a] minimal limitation in the claimant's ability to perform basic mental work and are therefore [non-severe]."  (Tr. 13). In supporting this conclusion, the ALJ discussed the findings of Dr. Ferguson, Dr. McPhersonSalandy, and Dr. Willens, who opined that Plaintiff's mental impairments were not severe.  (Tr. 13-15).  The ALJ then described her conclusions regarding the four areas of mental functioning which further bolstered her determination that Plaintiff's mental impairments were non-severe.  (Tr. 16-17).  I find that the Dr. Ferguson's opinions, the State agency psychologists' opinions, and the ALJ's conclusions were consistent with the observations found in the objective mental status evaluations.

Plaintiff argues that step-two has an "extremely low threshold" for finding severe impairments, and thus, the ALJ erred by classifying Plaintiff's mental impairments as non-severe. However, Plaintiff fails to consider that he never "objectively show[ed] when or how [his depression and anxiety] affected [his] ability to perform basic work skills." *Hutchinson*, 408 F. App'x at 327. As stated above, it is Plaintiff's burden to show that his mental impairments limit his ability to work. *Id.* Substantial evidence shows that Plaintiff was unable to meet this burden. For example, although Plaintiff claimed he needed someone to accompany him due in part to his "anxiety [from] being outside the apartment," a Cooperative Disability Investigations ("CDI") report, conducted by the Miami CDI unit based on suspicions that Plaintiff was exaggerating the severity of his functional limitations, showed Plaintiff at Publix on two occasions, alone, shopping without any noticeable difficulties. (Tr. 19-21, 314, 569). Further, Plaintiff stated to an Archways clinician that his goal was to obtain disability benefits and start a business, he planned to obtain employment, and he wanted to be self-employed with a home business. (Tr. 22, 827, 836, 841). These statements indicate that Plaintiff is willing and able to work, which directly contradict the contention that he has the burden of showing – that his mental impairments limit his "ability to perform basic work skills." *Hutchinson*, 408 F. App'x at 327. Because "the 'severity' of a . . . disability must be measured in terms of its effect upon ability to work," and Plaintiff failed to objectively show how his anxiety and depression limit his ability to work, I find that the ALJ's determination that Plaintiff's mental impairments were non-severe is supported by substantial evidence. *McCruter*, 791 F.2d at 1547.

Even assuming *arguendo* that the ALJ erred in failing to classify Plaintiff's mental impairments as severe, any such error was harmless because the ALJ proceeded beyond step two of the inquiry. *See Packer*, 542 Fed. App'x. at 891; *see also Ball v. Comm'r of SSA*, 714 F. App'x

991, 993 (11th Cir. 2018) (stating that "even if the ALJ should have determined that [claimant's] depression was severe, any error was harmless because the ALJ determined that [other impairments] were severe, which allowed the ALJ to move on to step three"). As such, the ALJ satisfied her obligations at this step.

Plaintiff argues that the ALJ's failure to find Plaintiff's mental impairments severe was not harmless error because the ALJ "did not include any mental restrictions" in the RFC. However, I find that the ALJ sufficiently accounted for Plaintiff's mental impairments in her analysis. The ALJ specifically stated that she reduced Plaintiff's RFC to account for his complaints of pain. (Tr. 24). Further, at step two of the analysis, the ALJ included a thorough discussion of the four areas of mental functioning along with relevant medical evidence. (Tr. 16-17). The ALJ concluded that Plaintiff's mental impairments were non-severe because they caused no more than mild limitations in any of the functional areas. (Tr. 17). I find that this conclusion was supported by substantial evidence. The ALJ also noted that the RFC assessment reflected the degrees of limitations that she found in Plaintiff's mental function analysis. (Tr. 17). Thus, although the ALJ characterized Plaintiff's mental impairments as non-severe, her opinion shows that she considered those impairments when she determined the Plaintiff's RFC. More importantly, Plaintiff was unable to meet his burden of showing how his mental impairments limit his ability to perform basic work skills. Thus, I find that the ALJ's decision regarding the severity of Plaintiff's mental impairments and ultimate RFC finding is supported by substantial evidence. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (stating that "the ALJ did not err in his decision about the severity of [the claimant's] depression or in the limitations included in the RFC assessment" in part because "the ALJ took into account [the claimant's] medically determinable mental

impairment in establishing limitations in the RFC assessment, and found that [the claimant] had only 'mild' limitations based on this impairment").

### C. Whether the ALJ failed to properly evaluate Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of his mental impairments

Plaintiff argues that the ALJ erred by failing to provide any evaluation of Plaintiff's statements regarding his mental impairments. I find that the ALJ considered Plaintiff's subjective statements and that her decision to discount those statements is supported by substantial evidence.

When a claimant attempts to prove that he is disabled by providing testimony regarding his pain or other subjective symptoms, he must show: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or subjective symptoms] . . . or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain" or subjective symptoms. *Dyer*, 395 F.3d at 1210 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This standard applies to both complaints regarding subjective pain and complaints regarding other subjective conditions. *Holt*, 921 F.2d at 1223. In order to discredit a claimant's subjective complaints, an ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561-62). If the ALJ does not make an explicit credibility determination, "the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)). Provided that an ALJ either explicitly or implicitly discredits a claimant's subjective complaints and that the ALJ's findings are supported by substantial evidence, courts will not disturb the ALJ's determination. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782

(11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." (internal citations omitted)).  The appropriate inquiry for a reviewing court "is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, Plaintiff contends that the ALJ failed to provide any evaluation of Plaintiff's statements regarding his mental impairments.  Although the ALJ's discussion of Plaintiff's statements concerning his mental impairments was not as robust as her discussion of Plaintiff's statements concerning his physical impairments, she did discuss his statements and articulated sufficient reasons for discounting them.  For example, the ALJ evaluated Plaintiff's statement that he does not get along with others and avoids people as regularly as possible.  (Tr. 16).  The ALJ correctly noted that, in contrast to Plaintiff's statement, medical records revealed that Plaintiff was cooperative, was a fair reciprocal conversationalist, and that Plaintiff stated he has "good friends" and was "very easy to get along with."  (Tr. 16, 315-16, 520, 562, 860, 872).  Further, the ALJ discussed Plaintiff's statement that his psychotropic medication makes him drowsy.  (Tr. 19).  However, as the ALJ pointed out, "Archways treatment notes routinely reflect that [Plaintiff] did not have any adverse side effects from his psychotropic medications, which is a good indication that they would not prevent him from performing work activity in any significant manner."  (Tr. 19, 811, 819, 863, 887, 899, 905, 911).  Further, as stated above, the ALJ considered Plaintiff's statements regarding his payments to individuals to accompany him places for his anxiety, but ultimately discounted them due to conflicting evidence.  (Tr. 19, 21, 314, 569).  Finally, the ALJ specifically noted that she reduced Plaintiff's RFC to account for his complaints of pain.  (Tr. 24).  Thus, even if the ALJ did not make an explicit credibility determination regarding Plaintiff's

statements regarding his mental impairments, I find that the implication of her findings is "so clear as to amount to a specific credibility finding."  *Foote*, 67 F.3d at 1562; *see also Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 711-12 (11th Cir. 2015) (finding that an ALJ's explanation of how the claimant's testimony was inconsistent with the medical record, in spite of an explicit credibility determination, created a clear inference of what testimony the ALJ found lacking credibility and why); *Taylor v. Commissioner*, 213 F. App'x 778, 780 (11th Cir. 2006) (finding that "although the ALJ did not make an explicit finding regarding the credibility of [the claimant's] testimony," there was a clear implication that the ALJ discredited the claimant's testimony based on a doctor's findings and the medical record).  Accordingly, I find that the ALJ adequately considered Plaintiff's statements and her decision to discount them is supported by substantial evidence.

**CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion (DE 26) and **GRANT** Defendant's Motion (DE 27).

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 28th day of July 2022.



**Jared M. Strauss**
**United States Magistrate Judge**